This is 21-13568 Sorrells v. Smith This is 21-13568 Sorrells v. Smith Are we missing counsel? All right. All right. All right. All right. All right. All right. All right. All right. All right. All right. All right. All right. All right. All right. All right. All right. All right. All right. All right. All right. All right. All right. All right. All right. Mr. Williams? Yes. Okay. Good morning. I'm Terry Williams. I represent the defendant and appellant Josh Smith in this appeal. Josh Smith is a detective with the Polk County, Georgia, Police Department. Defendant Smith is appealing the improper denial of a qualified immunity defense by the district court in regard to a claim for malicious prosecution, which was asserted by the plaintiff, took out against the plaintiff in 2017 in connection with an investigation into an illegal dogfighting operation. The illegal dogfighting operation was being run by plaintiff's boyfriend, Devecchio Riley. Detective Smith and other officers, including officers from Animal Control, ultimately seized 107 abused and neglected dogs, pit bulls, from Rowland at two different property locations. During the investigation, as the dogs were being seized and charges and Rowland was arrested, Detective Smith developed information that plaintiff had been aiding her boyfriend Rowland in this dogfighting operation. Therefore, Smith obtained arrest warrants. The first set of arrest warrants charged plaintiff with party to the crime of animal cruelty based upon the neglect and abuse of the dogs that had been seized, some of which, or at least one of which, and some puppies, ended up being in her residence when they went to interview her. So, we believe the district court erred in denying qualified immunity for a couple of reasons. First of all, the district court failed to consider the information Detective Smith possessed that was not included within the arrest warrant at the date. Now, as I mentioned, there was one arrest warrant. Isn't the question what was presented to the judge issuing the warrant, not what was in his possession or in his mind? No, Your Honor, I believe that at the time Detective Smith took out his warrants in 2017, case law allowed Detective Smith to support obtaining the warrants based on information he possessed, even though it may not have been included in the arrest warrant affidavit. Your argument is based on the fact that in 2020, we issued the opinion, and I don't even know how to pronounce it, Aguirre? I call it Aguirre. Aguirre, Aguirre. But Aguirre was not announcing a new rule. It was looking back over our precedent, and it was relying on the prior precedent rule going back to our earliest case law, which is an analysis that could have been done by anybody to reconcile the conflict in our precedent. So why isn't Aguirre, which simply was reconciling all of that and going back to our earliest case, why aren't we relying on that clarification that Aguirre provided? Because Officer Detective Smith was able, or should have been allowed, and was able to rely upon case law that did exist as of 2017. So this 11th Circuit in Aguirre cleared up the confusion and noted that there had been inconsistent opinions. But didn't Aguirre apply that law to an incident that happened in 2014, which is before the case was decided? It was applied, but the facts were different because there had been a misrepresentation. The court ultimately found that there was a misrepresentation, and the law had been clear for many years that it was a violation of the Fourth Amendment for an officer to misrepresent facts in the arrest warrant affidavit. There's no allegation in this case. Actually, what the allegation is that arrest warrant affidavits were just insufficient, which we concede there was not. The facts to support the problem cause was not laid out in the arrest warrant affidavits. Well, let's suppose there's no misrepresentation of what was in the arrest warrant. Let's suppose that I think Aguirre controls this case. Okay, so we're looking at what was presented to the judge who issued the warrant. In my view, and I'm speaking only for myself, those warrants look insufficient to me. To what extent are you relying on Smith's affidavit where he sets forth what he told the judicial officer? We are relying upon what information Detective Smith had, some of which he put in his declaration that he told the magistrate judge when he applied for it, even though it's not in the affidavit, and then other information he had that he may not have, couldn't recall whether he provided to the judge. Well, I ask you to assume that we're not looking at other information he had, only what he presented to the magistrate. Either in the affidavit or his declaration. It seems like there's only two, and I agree with that. You need to proceed that all we're going to consider is the declaration he did and then what's in the affidavit for the warrant. So you need to tell us why, based on those two pieces, there's enough evidence of probable cause for a felony, and then I'm going to get to whether it's a felony or has to be. I'm not so sure what it has to be. The information that the declaration, there was two declarations, and I just have one that doesn't address what information was provided to. Only one of them addresses what was provided to the magistrate judge, I think. Right. And that was additional information. It does have additional information beyond the affidavit. Right, and the additional information was photographs that he found, photographs of dogs that he found in an envelope that was at the plaintiff's residence, and these photographs were of dogs that were being abused and neglected, and I think there was a number of them, maybe 26 or 27 photographs. I know, but what does he state in the declaration? I don't think he says the number of photographs. He just says he was in possession of photographs of dogs that were believed to be located in various states and neglected other crime scenes. And the envelope containing those photographs had the plaintiff's name and phone number on them. Right. Which creates the suspicion and probable cause that she was involved in the operation because she's taken photographs from this evidence. It certainly supports that inference. The declaration also indicated that he provided to the magistrate and obtained veterinary medicines at her location that were used for injured dogs, some of which did not have any prescriptions for them and no labels on them. You're departing from what the declaration actually says, which is that she was in possession of several medicines which are prescription only. It doesn't say anything about injured dogs. Well, I believe that in his... That's the inference that the detective ended up getting, or the information that he had is that this was the medication for injured dogs. I don't know if that was... Again, we've got to go on what he either told the magistrate or put in that affidavit. And what he told the magistrate, I looked at the deposition. I didn't find anything extra he told the magistrate in his deposition. So we're stuck with this declaration and the affidavit, and you've got to tell us why it's probable cause or arguable probable cause. The fact that she had these photographs of these dogs that had been used apparently. I mean, there's abused and neglected dogs, and that's indicated in there. And that these prescription medications were found in her, veterinary medications were found in her residence. Well, prescription medications sound like that's something good you do for dogs, not bad for dogs. I mean, because there's no injury there. So what else besides the photographs, prescription medications, you don't use out of this affidavit or declaration? I'm not sure the other information was provided that supports those. Well, the other thing, she was in possession of puppies that were. Right. She had the female dog and puppies that had been at the original crime scene where they found the first set of 70-something dogs. But the mother dog and then the puppies were not at that location you're describing where all the other dogs were. They were at her house. When the detective interviewed her, they were at her house. And when the detective interviewed her, the detective had indicated that the dogs were in fine condition, and then seven days later they're now, the officer is alleging that they're severely underweight, lying in their own feces. But this female and puppies had been at that crime scene previously with the other dogs. Ms. Soares also told the detective that the photographs were not hers, didn't she, and that the medicines belonged to Mr. Rowland. I don't see that in this declaration. But the envelope had her name and phone number on it that contained the photographs. It certainly gives the inference that she had been involved either in taking the photographs or having them developed. So that is a connection to the operation. Yeah. She just says that she assumes Rowland took them and put the photograph development under her name. But I do think, you know, there's a dispute about that. So he could use the photographs. But the problem is that we don't have the photographs. He didn't show the photographs. There's nothing that says he showed the photographs to the magistrate judge. Do you agree with that? Right. Okay. All he's got is that he told the magistrate judge it was possession of photographs that were in various states of neglect at the other crimes scene. That's the most he's got. And let me ask you. You've said twice now that her name and number were associated with the photographs. But didn't she in her deposition say that the phone number attached to the photographs was actually Rowland's phone number? My understanding from what Dave had at the time that he got the envelope was that that number was associated with her. Well, but she in her deposition is saying that this is Mr. Rowland's phone number and she's hypothesizing that Mr. Rowland dropped the photographs off to be developed, used her name, but used his phone number. The phone number belongs to somebody, one person or another. So if he put it in an affidavit that it belonged to her and she's now saying it is Mr. Rowland's, that creates a problem for the one. That's not what the detective knew at the time he applied for the warrant, though. At the time he applied for the warrant, he knew the information that it was her number. It was her name and number. If it's written on there with her name, that would be a reasonable inference that that's her number. Okay, so he's guessing that the phone number is hers because it either is or it isn't, and she's testified it's not. That's right. It's a reasonable inference that if the number is beside a person's name that the envelope is developed for, that that would be associated with that person. That would be the person's number. Let me ask you one question. You are going to be proceeding under the any crime rule, the application of the any crime rule, correct? Yes, Your Honor. So the Supreme Court in the middle of April heard oral argument in Chiaverini v. City of Napoleon on the any crime rules application in malicious prosecution cases. Do you have a view on whether the malicious prosecution issues that the Supreme Court is confronting soon will affect this case, and if so, should we be waiting on that decision? I don't, Your Honor. I'm not familiar with that case currently. Our argument was on the any crime rule was that pre-Aguirre, the case law had held that probable cause for one crime charge was sufficient to defeat a malicious prosecution claim. And that's the Peyes v. Mulvey, and there's several other cases, 915 F. 3rd, 1276. It's in our brief. Thank you. Mr. Mason. Good morning, Your Honors. May it please the Court. My name is Cabal Mason, and I am arguing on behalf of my esteemed colleague, Clarence Victor Long. He has been impacted by some health conditions. I have, however, been on this case from the very beginning, and I have worked very closely with Attorney Long on the matter. My client, Candace Sorrells, who is the appellee in this matter, is present today in the courtroom, Your Honors. And I'm pleased to be here with you all. Your Honors, I'll begin with our basic fundamental statement of facts. And at any particular point in time that Your Honors feel the need to ask questions, I am more than open to that. We will concede, Your Honor, that this case begins with the police investigating Delvecchio Rowland, not Candace Sorrells. The police were investigating Delvecchio Rowland for dogfighting, and they sought to, for lack of better words, utilize Candace Sorrells in order to make their case against him. Candace Sorrells was visited by the police, who saw that she had eight dogs in her care, one mother, seven puppies. Now, that's important to us, Your Honor, because it's mathematically impossible for Ms. Sorrells to have been charged with 107 counts initially as it relates to cruelty to animals when she only had eight total dogs in her possession,  Well, she was not charged with cruelty to them. She was charged with party to a crime. Yes, she was, Your Honor. May I comment on that? Yeah, I mean, I don't know why you're saying what you're saying. I mean, she was charged with party to a crime, so the crime was Rowland's 107 dogs. Yes, Your Honor, and that has always been our stance on it. The dogs themselves belong to Rowland. We've never been able to understand why she was charged with party to a crime for 107 dogs that she did not own and were not in her possession. So you're saying there wasn't a sufficient connection between her and the other 99 dogs? Is that your argument? Yes, Your Honor. In fact, that's actually one of the arguments that we've raised even within our brief, and I believe that that's also what the court below noted, is that there was no reasonable connection. Well, the other side would say the connection was that she had photographs in the light most favorable to them. I do think the photographs of the dogs, he says, are in states of neglect, and she's got them at her house. So that's how they try to do the connection, that the bad dogs over at his house, she's got photographs of them at her house, and even her puppies, they say, are in a state of neglect. So that's the so-called connection. Yes, Your Honor. And for arguable probable cause about his dogs. I see Your Honor's point in that. I mean, that's what he presented to the magistrate judge. She's involved in helping him. She's keeping these puppies, and she's got pictures of the dogs that are at two other locations. Yes, Your Honor. Right. Do they know each other? Yes, Your Honor. They actually do. And I had a question. It looked like when he went to trial, right? Yes, Your Honor. And it looked like he was, as to the dog cruelty, he was only convicted of misdemeanors. Whereas the dog fighting was felon, and he got a whole bunch of time on that. But it looked like he only got 12 months, which tells me was probably a misdemeanor. Do you know what his convictions were? Your Honor, I do not. Okay. I am not defense counsel on that. Okay. I am a criminal defense lawyer. Yeah. I have not been involved with that case at all. No, I just wondered if you knew. Because to me, and I'm just, again, like Judge Pryor said, speaking for myself, I think there might have been enough for probable cause for cruelty to animals or arguable probable cause if he was charging her with a misdemeanor, but he appointed her crime to a misdemeanor. But the warrant and the affidavit say felony, although they don't cite the subsection. They just cite the statute. And so I'm trying to see how that plays out here. If you're with me, what I'm talking about. Your Honor, if it. And I think he only got charged and convicted for misdemeanors. So I don't. Well, moving backwards, Your Honor, again, I was not. Yeah, I understand. And if you don't know, that's fine. But I will say this, Your Honor. One of the elements of evidence that we believe is very substantial is the fact that the officers went through such great lengths in order to connect Ms. Sorrells, who was not a party to the crime. Not only did the grand jury refuse to indict her on any of the 214 counts, but Ms. Sorrells was not even called as a witness in that criminal proceeding at all. She has never been to court in any way, shape, or form as it relates to those criminal matters. Those criminal matters against Mr. Rowlands? Yes, they were. Well, they had him dead to the water. They got the dogs. I mean, they got the two places. They got the dogs. I mean, they got the evidence. I don't know who they need. Yes, they did, Your Honor. But we thought that it was very impacting that in that case, Ms. Sorrells was never called as a witness. Now, they did show up at her house. They did, for lack of better words, question her. And what was incredibly impacting about that questioning, and it's actually come out in the depositions, is that he literally threatens her and tells her that if you don't provide me with information in order to implicate Rowland, that I'm going to come and arrest you. And when she's not able to provide him with any information, she does just that. And that, Your Honors, in our opinion, leads to the idea of malice. Let me make sure I understand your argument. So do you agree that we have to consider what's in Smith's declaration in addition to the information provided in the affidavits in support of the warrant? Yes, Your Honor. In fact, we have always argued that the warrants themselves were infirm, and we do agree that the court should consider what is in the affidavits. All right. Well, let me ask you about some other statements in there. I think he's confusing affidavits and declaration. Oh, the affidavits in support of the warrant versus the declaration submitted in this case. Yes, I misworded that. To answer that question, yes, Your Honor, we do agree that you should consider those documents. All right. We consider the declaration, but he says he told the magistrate judge. Yes, Your Honor. Okay. All right. And the district court did not consider that. Isn't that right? The district court did not consider that, Your Honor. We believe that what the district court looked at specifically was the documents themselves that were placed in front of the court. And typically what we've seen, Your Honor, is that it's going to be those documents that are placed in front of the judge that are going to be called into question whenever we are questioning the validity or the invalidity of a particular warrant for search or a particular case. And when you say the judge, do you mean the magistrate, or do you mean the district court judge? Magistrate. Magistrate, okay. But we don't know anything about documents that were placed in front of the magistrate because we don't have those. Exactly, Your Honor. What we have is what is in the record. And if I'm hearing Your Honor's question correctly, anything that is in the record, I believe that the court should pay particularly close attention to. All right. Well, I want to ask you about statements in the declaration now that we know what we're talking about. In paragraph 6, it says, Ms. Sorrells was in possession of a mother dog and several puppies that had been taken from the Cashtown Road crime scene. And then it refers to the Puckett Road. Some of the medicines that were found in Ms. Sorrells' possession are also found at the Puckett Road crime scene. Why don't those two sentences support the warrant and also provide probable cause? Your Honor, I don't believe that they are specific enough. I think that the fact that the officer is alleging that the puppies that were at her residence were also the puppies that were at the other crime scene, I think that the officer should have in some way, shape, or form provided some insight as to, A, when those puppies were born, B, whether or not those puppies were transported and when those puppies were transported, and C, how did Ms. Sorrells actually come into contact with those puppies? Now, our client has testified in deposition that the puppies that were there were there because they were supposed to be given to her dog. And one of those puppies in particular was one that she had really taken a liking to. But I don't believe that that declaration that was written and provided by that officer is enough to create a cause and effect, for lack of better words, that shows even arguable probable cause. Are you contending that there are any material omissions in this declaration? I'm sorry? Were there any material omissions in this declaration? Your Honor, we have always argued that the officer in their investigation was not only infirm, but for lack of better words, fraudulent. We believe that the officer was so inclined to prosecute Delvecchio Rowland that he was willing to, for lack of better words, make Ms. Sorrells' life a nightmare. And so I cannot speak to what is not there. I will say that we do agree with the lower court's decision that the affidavits for arrest themselves were infirm and that there is not enough to create the causal connection. Thank you. Should I continue, Your Honor? You may. Your Honor, going forward, after completing that second search of the property, as I've stated before, Mr. Officer Smith stops on the steps, points his finger at Ms. Sorrells, and said, I'm going to give you until 3 p.m. on Thursday to give me some information about Delvecchio's dogfighting, and if you don't, I'm going to lock you up. And because Candace Sorrells refused to give him information to set up Rowland, Officer Smith proceeded to make her life a nightmare. And, Your Honor, we've always contended that this was both malicious and malign, and it was designed, for lack of better words, to punish her. It wasn't designed to enforce the law. He swore a warrant to charge her with those 107 counts. She was not charged, for lack of better words, for the dogs that were in her possession. Those dogs were fine, according to officials that showed up at the property. The affidavits contained essentially no facts to support probable cause for the particular crimes listed, let alone the amounts alleged. And we're citing the bond 878F2D at 1409. That case is also noted within our brief, as well as the lower court's writing. The lower court found that Detective Smith's explanation for seeking Sorrells' arrest was not objectively reasonable as a matter of law, and Sorrells' refusal to assist the officer in incriminating Delvecchio Rowland did not constitute facts or evidence that support that she committed 214 crimes. She was arrested at her job for the sole purpose of embarrassing her. And we've actually provided the court with the affidavit of a co-worker that states, and this is in the words of Carrie Blevins, she stated that Detective Smith told her that he and Detective Irvin arrested the plaintiff at work so that they could embarrass her. Detective Smith then took out a second warrant for 107 more felonies at her bond hearing, and we've always contended that that was simply to keep her in jail. At the bond hearing, was a bond set at the first bond hearing? That I'm not certain of, Your Honor. I do know that she spent 63 days in jail. I don't know whether a bond was posted, she just couldn't make it, or? I cannot answer that question at this point right now. You don't know? And would the record tell us? You don't know? I do not know the answer to that question, Your Honor. Your Honors, I'll also note that of the 214 total crimes that Mr. Sorrells was charged with, again, the grand jury refused to indict her on any of them. Yeah, that's why you have a malicious prosecution claim. Yes, Your Honor. That is why. That is why. And Your Honor, I listened intently to the questions as it relates to Aguirre, and we spent quite a bit of time within our brief noting that the lower court relied upon Aguirre correctly, and what Aguirre says in that case specifically, because that's a case that is about a shooting. It says that the court noted that the any crime rule in malicious prosecution is unresolved in our case law pertaining to 1983 malicious prosecution claims. The court then reviewed common law principles to determine whether the any crime rule applied to a claim for malicious prosecution. The court found that at common law, probable cause was specific to each accusation. Thus, finding that any crime rule did not apply to malicious prosecution claims. But, of course, Aguirre was in 2020, and this is all happening in 2017. Yes, it is, Your Honor. And I would note in your brief, in the red brief, it says that at the bond hearing, the judge announced that her bond would be set at $80,000 cash, and she was unable to make the cash bond. Thank you for that clarification, Your Honor. May I also continue on with my assessment on Aguirre? Or, I'm open for any questions. You're over your time. Thank you. Thank you, Your Honor. Rebuttal? Thank you, Your Honor. Quickly, there's not too much more I wanted to go back into. I think the court has aptly indicated that the declaration by Detective Smith as to what he told the magistrate judge can be considered. And we contend that what information is contained in that declaration does support at least arguable probable cause for purposes of qualified amenity. The declaration established that the detective told the magistrate about the possession of the female dog and puppies that had been seen at the Cashtown Road. That's a very significant piece of information, which gives a reasonable inference and suspicion that she's assisting in at least hiding some of the dogs that had been there to maybe continue the operation later. And that she was in possession of the same type of veterinary medicine that had also been found at Cashtown Road. Now, there certainly can be innocent explanations for those things, but it certainly can be viewed by a reasonable officer to be arguable probable cause that she's involved in this operation with her boyfriend. So, arguable probable cause is a lesser standard. It just requires a showing of evidence that a reasonable officer could have believed supported probable cause, even if that opinion turns out to be mistaken. Therefore, the district court failed and erred in not considering that evidence and denying qualified amenity. We ask the court to reverse that decision. Thank you, counsel.